## 26037. GAY *v.* JENKINS COUNTY.

DECIDED MAY 13, 1937.

*H. A. Boykin, R. Lee Moore,* for plaintiff in error.
*Dekle & Dekle,* contra.

BROYLES, C. J. The commissioners of roads and revenues of Jenkins County issued an execution against Jesse M. Gay, a former tax-collector of said county, as principal, and the Consolidated Indemnity and Insurance Company of New York, as surety, for the principal sum of $4535.98, for an alleged failure to turn over to the county that amount of tax money collected by the defendant in execution. The execution was levied on certain property of the defendant, and he filed his affidavit of illegality, denying that he had defaulted in any amount. On the trial the judge directed a verdict for $4198.62. Gay made a motion for new trial, which was overruled, and on this judgment he assigns error. The testimony adduced by the defendant in execution did not raise any issue of fact, as to the material and controlling issues, that required submission of the case to a jury. While the mere contentions and conclusions of the defendant in execution to the effect that he was not short with the county were at variance with some portions of the evidence, the undisputed proved *facts* demanded the verdict directed in favor of the county. The evidence shows that according to the defendant's own records he had collected from 54 taxpayers of the county taxes which he had not turned over to the county. The defendant admitted that he could not show where he had paid this money to the county, admitted to the county commissioners that he was short, and asked for time to raise the money. The evidence shows that when the defendant would remit collected taxes to the county he would file in the office of the county commissioners a "settlement sheet." There was one settlement, on February 2, 1935, for which he filed no settlement sheet, but for this settlement he was issued a receipt which was included and considered as a settlement sheet in the trial. He also kept a "cash-book" showing collections made. According to the settlement sheets and the cash-book (both his own

records) he was short in his account with the county more than the amount of the verdict; the judge having directed a verdict for the least possible amount that could be arrived at under the testimony. The evidence also showed that after a thorough investigation by the State the plaintiff in error was removed from office as tax-collector of Jenkins County.

While the evidence showing that the defendant in execution was indebted to the county is too voluminous to quote, the following excerpts therefrom will suffice to show that the verdict was demanded: Gay, the defendant in execution and now the plaintiff in error, testified: "I started in my office as tax-collector on January 1, 1929, and I was removed from office by the Governor in 1935, along about the summertime. . . Those are the names I entered on the cash-book [indicating], beginning with Mrs. E. B. Aycock Sr., January 29, 1935. I put all those names on there, showing those taxes had been paid. . . On that date I had 54 names on that file. Those names appear on pages 31 and 32. . . I entered those names on that book. . . Mr. Smith [the auditor] suggested that we go down and talk to Mr. Gray [a county commissioner]. He claimed I was short on the books the amount of those 54 tax items. . . When I got down to Mr. Gray's office I told Mr. Gray that it appeared that way. . . My explanation as to why I did not put those names on my record at the time I collected them some two or three months before they were entered is, I did not enter them on the book because I did not have time to put them there. . . After I had this talk with Mr. Gray and with Mr. Smith in Mr. Gray's office, that night I went to the home of Steve Godbee, one of the county commissioners in this county. I told Mr. Godbee that Mr. Smith had checked me short. I do not remember whether I asked it, or he requested or suggested it, that we go to the home of Mr. Jones, the chairman of the board of county commissioners, that same night. Anyway we went there. . . I asked Mr. Jones to call a meeting of the board the following day. . . I asked time to adjust it. . . It is true that they said it would not be of any benefit to me to indulge me for thirty days unless the State would do likewise, and they would hold it in abeyance and find out from Atlanta if the State would indulge me. . . As to whether I will state that [I said], 'Gentlemen, I am not saying this for the

purpose of playing on your sympathy,' or words to that effect, 'this thing will follow me to the grave and ruin me; but when I first got this it was above what it is now, and I have reduced it by more than $2000,' I would not say that I did or did not say it. . . I have not a settlement entry for those 54 names. . . I do not know where the settlement entry is for those 54 items, or for them I do not know what checks I paid out for them. When I swore I made settlement sheets I did not include the 54 names in that cash-book; I did not mention that. . . I do not know as I can swear to this court and jury that I have at any time had issued to me a receipt by Jenkins County, or by its authority, for any part of the money covered by these 54 names we have been dealing with, or that I have at any time had issued to me a receipt by Jenkins County, or its commissioners, or its clerk of the board of county commissioners, a receipt that covered any part —that showed payment on my part of any part of the money that I collected from the 54 taxpayers. *I can not show that I have ever paid Jenkins County any part of this money.* I have no way of showing it. . . I kept a cash-book for all the while I collected taxes for Jenkins County as tax-collector. All those names appear on this book from whom I collected taxes." (Italics ours.)

Edgar Daniel, clerk of the board of county commissioners, testified: "I heard what Mr. Gay had to say . . with reference to property, raising the money and so forth. He offered to raise it with his car and house and lot, and [said] that his brother Ed would put up certain of his farm property. . . If he had made a denial I would have known it. He did not make any denial. When those settlement entries were. made from time to time by Mr. Gay, during the time he was tax-collector, there was something that was filed in our office, the commissioners' office, . . a sworn settlement sheet. . . With respect to the 54 taxpayers whose names appear partly on page 31 and the balance on page 32, below the words 'collected prior to December 20, 1934,' *there was no settlement entry made on the cash-book nor was there any settlement sheet filed with us by Mr. Gay as tax-collector with respect to those 54 names.* . . He never made any settlement sheet or filed any settlement with the board of county commissioners showing he paid the taxes over to the county from

the 54 names or items of tax collections. . . He has made no settlement statement like that for those items. I have looked through our files. I found there all of those for the year 1934, except those 54, and my testimony is that he never filed one for them, and, so far as I know, he never has claimed to have filed one. . . In other words, *there is a difference there then of what his cash-book shows he collected for Jenkins County and what his sworn settlement sheets show,* and the receipt which takes the place of one of the settlement sheets, *and it shows that he is short exactly the amount he collected, exactly the sum that he collected from the 54 taxpayers* whose names appear on pages 31 and 32, below the words 'collected prior to December 20, 1934.' . . He did not account for the taxes collected from those 54 names listed on pages 31 and 32. . . I know that he wanted time to raise the money and the board granted the time he asked for." (Italics ours.)

S. S. Godbee, county commissioner, swore that Gay "admitted that he was short something like four thousand and some hundred dollars. . . He admitted that he was short with the county, and said he had been short a good deal more, but had reduced it down; . . that it was his red wagon and he was responsible for what was short; that he was the tax-collector and wanted to make good taxes collected by him while he was tax-collector." R. C. Jones, chairman of the board of county commissioners, testified that Gay admitted to him individually and to the board of commissioners that he was short, and asked for time to get up the money. Robie Gray, county commissioner, swore that Gay admitted being short $4400, and asked for time to raise the money. W. Y. Smith, a certified public accountant who audited Gay's books, swore that he found the shortage and told Gay "'Let's go report it to the commissioners if you collected some money that you have not reported,' and he said 'all right,' and we went to Mr. Gray's office, and I told Mr. Gray I had found a discrepancy in Mr. Gay's figures, in his accounts there, for 1934, of approximately $4400. Mr. Gay said he was short that much. Mr. Gay told Mr. Gray he was short that much. Mr. Gray asked him if he owed the county that much money or was short that much money, and Mr. Gay said 'It is about $4400.' . . He made a statement about that shortage having at one

time been larger than it was at that time, and he said he had been able to reduce it about $2000. . . He asked my views in the matter, and asked me whether or not he should leave the county. . . Referring to those 54 taxpayers whose names appear below the words 'collected prior to December 20, 1934,' on pages 31 and 32 of the cash book for 1934, his record shows that he has made no settlement for that part of it, for any of that money that he collected." H. D. Chapman, an auditor for the State, testified: "His [Gay's] cash-book shows that he has not accounted to Jenkins County for the taxes collected from the 54 persons listed on pages 31 and 32 of his 1934 cash-book and listed after the words 'collected prior to December 20, 1934.' . . My testimony is that Jesse M. Gay was revealed by our audit to be indebted to Jenkins County at the time our audit was completed for the sum of $4198.62. . . I know that settlement had not been made for those collections from those 54 taxpayers. . . Those collections were made and entered on the cash-book, and no settlement was made for them. . . I don't know whether he stole it or took it. He admitted he was short."

There was much more evidence to the same effect as the foregoing. The testimony of the defendant in execution amounted merely to his contentions and conclusions that he was not indebted to the county; but the proved facts showed that, according to the defendant's own records, he was so indebted. The amount of the verdict directed by the judge was for the smallest amount shown by the testimony, and a verdict for that much was demanded by the evidence. "When, upon a review of all the evidence with the reasonable deductions therefrom, it is manifest that there is but one finding which can be legally supported it is not reversible error to direct a verdict." *Cleveland-Manning Piano Co.* v. *Stewart,* 15 *Ga. App.* 657 (4) (84 S. E. 174); *Gibson* v. *Hodges,* 147 *Ga.* 789 (3) (95 S. E. 696); *Woodruff* v. *Executive Committee of the Baptist Convention,* 173 *Ga.* 102 (159 S. E. 855). The record shows that after the shortage was discovered, the defendant in execution submitted a bill to the county for $9280.13. There was no evidence in support of this bill. As to it the defendant testified: "Referring to that bill I presented on April 2, 1935, to Jenkins County, . . I presented this bill for $9280.13. . . I will not explain why I presented that bill.

I say I can not assign any reason for it. As to whether it is true that I did it in an effort to offset the shortage, I understand that the bill was over and above the shortage; that is all I know about it."

A special ground of the motion for new trial assigns error on the refusal of the court to admit evidence that the defendant "paid out from the Bank of Millen" certain money to different parties including Jenkins County, the court excluding all the evidence except as to Jenkins County. The fact that the defendant once had the money in the bank does not show that he paid it to the county. If this were a criminal case in which the defendant was charged with theft of the money, evidence of what disposition he made of it might be admissible to show that he did not intend to steal it; but since it is a civil case, and the issue was whether the defendant in execution had paid all money due to Jenkins County, any evidence of payments to others was immaterial and inadmissible. Moreover, "a new trial will not be granted solely because of the exclusion of evidence which, if it had been allowed, could not have produced a different result." *Rountree* v. *Gaulden,* 123 *Ga.* 449 (4) (51 S. E. 346). "Errors in admitting or rejecting evidence may be regarded as immaterial, where the verdict is undoubtedly right, and where the result ought clearly to be the same with as without the correction of such errors." *Lewis* v. *Adams,* 61 *Ga.* 559 (4). "The law presumes, when a fi. fa. is issued against a county tax-collector, that the amount named therein is due by the officer, and the burden is on the tax-collector to show that the fi. fa. is invalid or inoperative in whole or in part." *McDuffie* v. *Wilcox County,* 165 *Ga.* 164 (4, 5) (140 S. E. 379). Under the above authorities and the facts of this case, there is no merit in the general or special grounds of the motion for new trial; and the court did not err in overruling the motion.

*Judgment affirmed.* *MacIntyre and Guerry, JJ., concur.*